# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### Civil Case No. 1:10-cv-00228-MR
### [Criminal Case No. 1:08-cr-00015-MR-1]

| | | |
|---|---|---|
| STEVEN JAMES HALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on the Petitioner's Motion to Vacate, Set Aside or Correct Sentence, filed pursuant to 28 U.S.C. § 2255 [Doc. 1] and the Respondent's Motion for Summary Judgment [Doc. 6] on the claims raised by Petitioner, as well as the following motions:

(1)     Petitioner's motion to amend his § 2255 motion [Doc. 21];

(2)     Petitioner's motion for the Court to take notice of <u>Missouri v. Frye</u> [Doc. 22];

(3)     Petitioner's motions for default [Docs. 23 & 24];

(4)     Petitioner's motion for an order to show cause [Doc. 25];

(5)     Petitioner's motion for clarification on whether the Government will file a response to his motion to amend [Doc. 26];

(6)     Petitioner's motions requesting the Court to take notice of <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011) (en banc) [Docs. 27 & 28];

(7)     Petitioner's motions for summary judgment [Docs. 29 & 30]; and

(8)     Petitioner's motions to compel rulings on his pending motions [Docs. 31, 32, 33, 34 & 35].

For the reasons that follow, Respondent's motion will be granted, and Petitioner's motions will be denied and dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On February 6, 2008, Petitioner was indicted on three counts of transportation of child pornography, in violation of 18 U.S.C. §§ 2252(a)(1) and (b)(1) (Counts 1-3); one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count 4); and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(4) and (b)(2) (Count 5). [Criminal Case No. 1:08cr00015-MR, Doc. 1: Indictment]. Petitioner was appointed counsel and pled guilty without the benefit of a plea agreement.

On April 28, 2008, Petitioner appeared with appointed counsel to plead guilty to all charges without a plea agreement. At his Rule 11 hearing, Petitioner was placed under oath and the Court carefully explained the elements of each count in the Indictment; the minimum and maximum

penalties upon conviction on each count; and the Petitioner's right to elect to plead not guilty and proceed to trial where the Government would have the burden of proving each element of the charge counts before a jury and beyond a reasonable doubt. In addition, Petitioner was informed that he would have the right to put on a defense, including calling witnesses and testifying on his own behalf. Petitioner confirmed that his plea was voluntary and not the result of any coercion, threats, or promises in any way; that he had met with his defense attorney and that he believed he understood how the sentencing guidelines might apply to him; that he had ample time to discuss with counsel any possible defenses that to the charges; and that he had told counsel everything that he wanted her to know about the case. Petitioner further confirmed that he was entirely satisfied with the services of his attorney. The Court's questions, along with Petitioner's answers to them, were recorded and presented to Petitioner in writing for his review. Petitioner reviewed this document and signed it. Thereafter, the Court accepted Petitioner's guilty plea. [Id., Doc. 12: Acceptance and Entry of Guilty Plea].

In advance of Petitioner's sentencing hearing, the U.S. Probation Office prepared a presentence report ("PSR"). In the PSR, the probation officer grouped counts according to U.S.S.G. § 3D1.2(d). With respect to

the transportation counts, the probation officer began with a base offense level of 22. First, the probation officer increased the base offense level by two levels because the material involved prepubescent minors under the age of 12 years. [Id., Doc. 9: PSR at 8-9]. The probation officer then increased the offense level by five levels because the offense involved the distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain. [Id. at 9]. Next, the probation officer increased the offense level by four levels because the offense involved material that portrayed sadistic and masochistic conduct or other depictions of violence. [Id.]. Because the offense also involved a computer, the probation officer increased the offense level by two levels. [Id.]. The offense also involved 600 or more images of child pornography, so the probation officer increased the offense level by 5 levels. [Id.]. Finally, the probation officer reduced the offense level by 3 levels for Petitioner's acceptance of responsibility and timely guilty plea. [Id.]. The PSR thus calculated Petitioner's total offense level to be 37. [Id.].

With regard to Petitioner's criminal history, the probation officer assessed a total of two points: one point for an April 12, 2001, conviction for "Misdemeanor Financial Card Fraud" and one point for a November 4, 2002, conviction for "Misdemeanor Worthless Check Closed Account." [Id.

at 10]. The probation officer thus calculated a criminal history category of II. [Id. at 11]. With a total offense level of 37 and a criminal history category of II, the guideline range for imprisonment in the PSR was between 235 and 293 months. [Id. at 14].

On October 6, 2008, Petitioner's counsel filed objections to the PSR. On October 17, 2008, the probation officer entered his final PSR and responded to Petitioner's objections. In the objections, Petitioner made several administrative corrections to the data in the report that did not bear upon the sentencing guidelines calculation, as well as an objection regarding the "screen names" utilized by Petitioner. [Id. at 16]. In addition, Petitioner objected to the five-level enhancement for the number of images based on his belief that he possessed less than 600 images. [Id. at 17]. Citing the report of the computer forensics examiner which indicated that Petitioner possessed more than 600 images, the probation officer declined to make any changes to the report. [Id.]. Next, Petitioner objected to the report that he admitted receiving three images per week. [Id.]. The probation officer deemed the case detective to be credible and did not change the PSR. [Id.]. Finally, Petitioner objected to the worthless check conviction listed in Paragraph 55 of the PSR. [Id.]. The probation officer responded that records from the North Carolina District Court for

Rutherford County indicated a valid conviction and he therefore did not change the PSR.  [Id.].

On November 18, 2008, the Court[1] conducted Petitioner's sentencing hearing.  [Id., Doc. 27: Sentencing Transcript at 1-21].  During the hearing, Petitioner confirmed that he had reviewed the contents of the PSR and understood them.  [Id. at 2-3].  Defense counsel renewed the objections to the PSR regarding the number of images and the inclusion of the conviction listed in paragraph 55 of the PSR.  With respect to the number of images, the Government agreed that the number of images should be deemed to be more than 300 but less than 600.  Accordingly, the Court sustained Petitioner's objection and reduced the offense level by one level.  [Id. at 9].  With respect to the prior conviction, the Court found that the available records sufficiently documented this conviction and overruled the objection.  [Id. at 9].  With this change the Court determined the total offense level to be 36 rather than 37, and the Guidelines range to be 210-262 months.  After hearing arguments from counsel and giving Petitioner an opportunity for allocution, the Court sentenced Petitioner to a total of

---

[1] The Honorable Lacy H. Thornburg presided over Petitioner's sentencing.  This case was reassigned to the undersigned in October 2010 following Judge Thornburg's retirement.

210 months' imprisonment,[2] which was the low end of the applicable Guidelines range.  [Id. at 16; Doc. 18: Judgment].

Petitioner appealed to the Fourth Circuit Court of Appeals.  On appeal, Petitioner's appellate attorney, Carol Ann Bauer, filed an Anders[3] brief on behalf of Petitioner, raising the issue of whether Petitioner entered his plea voluntarily.  In a *pro se* supplemental brief, Petitioner raised the issues of whether his Speedy Trial rights were violated and whether Counts Three and Four of the Indictment were defective because they failed to "establish" an interstate nexus.  The Fourth Circuit affirmed in all respects. United States v. Hall, 377 F. App'x 300 (4th Cir. 2010).

On October 8, 2010, Petitioner filed the present motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  In his motion, Petitioner presents four claims of ineffective assistance of counsel, alleging that counsel was ineffective in (1) failing to seek the suppression of evidence based on an invalid search warrant; (2) failing to seek dismissal of the Indictment based on a violation of Petitioner's Speedy Trial rights; (3) failing to seek dismissal of the Indictment based on the so-called "Silver Platter" doctrine; and (4) failing to object to the incorrect application of a

_____

[2] This consisted of 210 months on each of Counts One through Four and 120 months on Count 5, all such terms to run concurrently.  [Id., Doc. 18: Judgment].

[3] Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

prior conviction at sentencing.  In support of his motion, Petitioner submits sworn affidavits from Linda White, Emma Swofford, and Jeffery Hall.  [Doc. 1 at 21-32].  In response to Petitioner's allegations, the Government presents the affidavit of Petitioner's trial counsel, Fredilyn Sison.  [Sison Aff., Doc. 5-1].

## II.     STANDARD OF REVIEW

### A.     Section 2255 Proceeding

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief.  The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### B.     Summary Judgment

Summary judgment is appropriate in cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to judgment as a matter of law.  United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991) (applying summary judgment standard to motion to vacate).

Any permissible inferences which are drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, when the record taken as a whole could not lead a trier of fact to find for the non-moving party, granting summary judgment is appropriate. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III.   DISCUSSION

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689, 104 S.Ct. 2052. A petitioner seeking post-conviction relief bears a "heavy burden" to overcome this presumption. <u>Carpenter v. United States</u>, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. <u>Id.</u>

To demonstrate prejudice in the context of a guilty plea, Petitioner must still satisfy the standard set forth in Strickland. In regard to the second prong, Petitioner must demonstrate that he was prejudiced by ineffective assistance of counsel by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Under these circumstances, Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

## A. Invalid search warrant

In his first claim for relief, Petitioner contends his trial counsel was ineffective in failing to move to suppress certain evidence found during the execution of a state search warrant. [Doc. 1 at 4; Doc. 1-1 at 15, 28-31].

According to the factual basis as set forth in the PSR, on December 23, 2006, the Chief of Police of the New Waterford Police Department ("NWPD") in Ohio was conducting an on-line investigation into child pornography transmitted over the internet. Petitioner, using the screen name "contourimpco," initiated contact with the NWPD Chief through the use of instant messaging. The two exchanged messages and Petitioner then sent an e-mail to the chief which contained a picture of what appeared to be a naked, prepubescent female. [Criminal Case No. 1:08cr00015, Doc. 16: PSR ¶¶ 4, 7]. On July 5, 2007, the NWPD Chief, utilizing the same screen name as on December 23, 2006, received an instant message from Petitioner, who was also using the same screen name as during their December exchange. Petitioner inquired about the age of the chief's daughter and whether the chief had sex in front of her or if he let her join in. Petitioner also admitted to having X-rated pictures of his 15-year-old daughter and his 12-year-old niece. The exchange continued and eventually Petitioner transmitted video images and additional pictures of

what appeared to be prepubescent females. On the strength of this evidence, the NWPD Chief obtained a search warrant which was served on AOL for subscriber information in an effort to ascertain the identity of the individual using the screen name "contourimpco." The information provided by AOL revealed the subscriber to be Petitioner. After securing this information, NWPD Chief contacted law enforcement in North Carolina and a North Carolina search warrant was secured and executed by the Buncombe County Sheriff's Department ("BCSD") on September 12, 2007, at Petitioner's address in Candler, North Carolina. [Id. ¶¶ 8-14]. The search resulted in the seizure of several videos, a camera, two computers and "miscellaneous items." [Id. ¶ 15].

On the day of the search, Petitioner was interviewed by a detective from BCSD and he admitted to sending images of young girls, and to receiving such images, and he confessed to making a "stupid mistake" but claimed that he was unaware his admitted activities were illegal. [Id. ¶ 16]. During the interview Petitioner authored a written statement to BCSD:

> The pictures on my computer were sent to me by other people on the computer. I have not taken any pictures to be sent. I do not know who any of the girls are. All I know is what was told to me by the people who sent them. I have never taken pictures of any one nude. I am only guilty of looking and receiving the photo's [sic]. As to who the girls are

and the ones who sent them I have no idea who
they are.

[Id. ¶ 18].

The ensuing search of the computer, which included discovery of several chat sessions between "contourimpco" and other users, revealed hundreds of images of what appeared to be prepubescent girls, some engaged in sexual activity with adult males.  On November 6, 2007, the BCSD arrested Petitioner on a state charge of second degree sexual exploitation of a minor; on April 14, 2008, the state charge was dismissed after Petitioner was indicted on federal charges.  [Id. ¶ 28].

Petitioner raises several challenges to the validity of the search warrant.  He contends that the state search warrant was not supported by probable cause because the affiant, BCSD Detective Jeff Sluder, did not have "personal" knowledge of the allegations giving rise to issuance of the warrant, that there were numerous factual deficiencies in the warrant, and that the delay between the alleged criminal transmissions of child pornography and the issuance of the warrant and resulting search calls into question whether Petitioner was actually the user of the computer at the times in question.  [Doc. 1-1 at 28-31].  Petitioner maintains, in a rather conclusory fashion, that the length of time between the exchange of emails between Petitioner and the NWPD Chief and the issuance of the search

warrant rendered "the claimed evidence stale and unreliable." [Doc. 1-1 at 29].

For a search warrant to be valid, it must be supported by probable cause. As the Supreme Court explained, in assessing whether to issue a search warrant, "[t]he task of the magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular case. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Illinois v. Gates, 462 U.S.C. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (internal citation omitted). "When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996). A reviewing court must afford "great deference" to a judicial probable cause determination. United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004).

A copy of the application for the BCSD search warrant [see Doc. 5-4], and the summary of the contents of the search warrant as detailed in the

PSR, demonstrate that the information provided by Detective Sluder to the state magistrate clearly establish probable cause to support the issuance of a search warrant for both the Petitioner's residence and any vehicles located at the residence. The Application provides an overview of Detective Sluder's training and experience, and includes extensive details regarding the Ohio investigation. For instance, there are details regarding the online discussions and transmissions of child pornography in July and August 2007, between NWPD Chief and Petitioner — including information leading to the issuance of the AOL warrant, which revealed Petitioner's address in Candler, North Carolina — and information discovered by Detective Sluder through his investigation into the allegations provided by the chief in Ohio. This subsequent investigation, which included personal surveillance and public records searches, confirmed Petitioner's Candler address. Following this confirmation, Detective Sluder applied for, received, and executed the BCSD search warrant on September 12, 2007.

In arguing that counsel was ineffective in failing to move to challenge the search warrant, Petitioner makes several factual assertions which are incorrect. First, Petitioner claims that there was a two year delay between the time of the email received by the NWPD Chief and the execution of the search warrant. According to the affidavit and the facts accepted by

Petitioner in the PSR, however, the last email sent to the undercover officer was transmitted on July 5, 2007, not July 5, 2005.  Second, Petitioner asserts that the search exceeded the scope of the warrant. The affidavit attached to the warrant referenced Petitioner's home and vehicle and identified the items to be searched for as including computers and computer data, items which can be readily hidden nearly anywhere. Petitioner has failed to identify any specific place that was intruded upon by law enforcement that was outside the scope of the warrant.  For these reasons, the Court cannot conclude that the search was unlawful or that counsel's performance fell below an objective standard of reasonableness when she failed to challenge the validity of the search warrant.

### B.    Failure to move for dismissal on Speedy Trial grounds

Petitioner next contends that counsel provided deficient representation under Strickland in failing to move to dismiss the indictment on Speedy Trial grounds.  [Doc. 1 at 4; Doc. 1-1 at 32-38].

Petitioner presents a lengthy argument regarding this issue. Petitioner, however, raised the substance of this argument on appeal, and the Fourth Circuit rejected his claim.  See Hall, 377 F. App'x at 301 n.1 ("In his pro se brief, Hall contends that the delay between his arrest and arraignment violated the Speedy Trial Act . . .  Our careful review of the

record leads us to conclude that Hall is not entitled to relief on these claims."). Therefore, Petitioner is precluded from renewing this argument in this collateral proceeding. An issue previously decided against a petitioner on direct appeal from his judgment cannot be raised again in collateral review. See, e.g., Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (citing Herman v. United States, 227 F.3d 332 (4th Cir. 1955)); United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (holding that the law of the case doctrine "forecloses litigation of issues expressly or impliedly decided by the appellate court.") (internal citation omitted). Petitioner's attempt to renew this argument under the guise of ineffective assistance of counsel is unavailing and this claim for relief will be denied.

## C. "Silver Platter" Doctrine

In his next claim, Petitioner contends that his trial counsel was ineffective because she failed to move for exclusion of the evidence obtained in the search warrant because it violated the "Silver Platter" doctrine. [Doc. 1-1 at 38-40]. In so arguing, Petitioner merely repeats his assertion that the evidence was obtained in violation of the Fourth Amendment.

Under the so-called "Silver Platter" doctrine, state law enforcement officers were allowed to hand over to federal authorities evidence that

would have been suppressed under the Fourth Amendment had it been seized by the federal authorities. This historical exemption to the exclusionary rule was eliminated by the Supreme Court in <u>Elkins v. United States</u>, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), in which the Court held that "evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." <u>Id.</u> at 223.

While Petitioner is correct that evidence obtained illegally by state authorities may not be used in a federal prosecution, Petitioner has failed to show that the evidence obtained in his case was illegally obtained. As discussed <u>supra</u>, the evidence obtained from the search of Petitioner's residence was admissible against him under the Fourth Amendment analysis. As such, Petitioner suffered no prejudice and defense counsel was not ineffective in failing to raise a "Silver Platter"-style argument.

### D. Failure to argue for sentencing under amended Sentencing Guidelines

In his next claim for relief, Petitioner contends his trial counsel was ineffective under <u>Strickland</u> because she failed to object to the inclusion of a criminal history point for a conviction for misdemeanor worthless check,

and she failed to conduct a sufficient review of the PSR with him prior to sentencing. [Doc. 1-1 at 40-42]. Petitioner argues that because of counsel's deficient performance, his Criminal History Category was raised from Level I to Level II and his Guidelines range was therefore increased from 188-235 months to 210-262 months' imprisonment. Notwithstanding the fact that Petitioner received a sentence of 210 months, which is within both of these ranges, Petitioner contends that he suffered prejudice as a result. Petitioner's argument again misrepresents the record before this Court.

On October 6, 2008, Petitioner's counsel filed a written objection to the inclusion of this worthless check conviction contending that "Petitioner did not recall this conviction." [Criminal Case No. 1:08cr00015, Doc. 15: Objection to the PSR at 2]. The probation officer responded to this objection by noting the information regarding the conviction was obtained from court records maintained by officials in Rutherford County. The probation officer concluded that these records provided "credible and reliable" information to support the finding that Petitioner had sustained this conviction. [Id., PSR at 18].

Contrary to Petitioner's present assertion, it appears that his trial counsel did, in fact, review the PSR with him in advance of his sentencing

hearing as evidenced by Petitioner's acknowledgement of this fact in open court. Trial counsel's representations to the Court confirm this fact as well. [See id., Doc. 27: Sentencing Tr. at 2-3]. In objecting to the inclusion of this conviction, Petitioner's trial counsel maintained that Petitioner did not recall the conviction and she moved for the production of the state court materials which could prove Petitioner was convicted of the misdemeanor offense identified in paragraph 55 of the PSR. [Id. at 6, 8-9].

During the sentencing hearing, the Government offered a printout of an image of the Rutherford County clerk of court's computer screen which included Petitioner's name, date of birth, and plea of guilty to the criminal charge. The Court accepted this evidence and overruled Petitioner's objection to paragraph 55 after finding that "the court record clearly [shows that Petitioner] pled guilty to the worthless check count and that restitution in the amount of $129 was ordered." [Sentencing Tr. at 8-9]

Petitioner's argument that his trial counsel did not raise an objection to the inclusion of this conviction is clearly contradicted by the record before this Court. That the Court denied the objection cannot serve to support Petitioner's claim of ineffective assistance of counsel in this § 2255 proceeding, and thus, this claim will be denied.

### E. Motion to Amend

Petitioner filed a motion to amend his Section 2255 petition to include a claim that his trial counsel was ineffective for failing to inform Petitioner of a written plea agreement offered by the Government prior to his entry of a guilty plea (Ground Five), and that the district court violated his rights under the Speedy Trial Act by failing to return a timely indictment against him following the filing of a federal detainer (Ground Six). [Doc. 21].

The amendment of § 2255 pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Here, Petitioner's motion to amend was filed on April 25, 2012, some eighteen months after he filed his § 2255 motion and thus would be untimely under § 2255(f). An otherwise untimely proposed amendment, however, will relate back to the date of the original § 2255 petition if the newly asserted claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). In order for the Court to find that an otherwise untimely claim relates backs, the proposed amended claim must arise from the "same core facts," and not be dependent upon events which are separate both in time and in the substance of the facts upon which the original claims depended. See Mayle v. Felix, 545 U.S. 644 655-57, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005). Here, Petitioner's proposed amended

claims do not arise out of the "same core facts" as asserted in his original petition and thus they are subject to dismissal as untimely, successive claims.

Even if the proposed amended claims did relate back, however, they would still be subject to dismissal as being futile.

For example, in Petitioner's proposed Ground Five, Petitioner now seeks to raise a substantive claim based on counsel's failure to communicate the plea offer based on the Supreme Court's recent decisions in <u>Lafler v. Cooper</u>, 566 U.S. __, 132 S.Ct. 1376, 182 L.Ed.2d 298 (2012), and <u>Missouri v. Frye</u>, 566 U.S. __, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

The main crux of Petitioner's claim appears to be that trial counsel rendered ineffective assistance when she failed to convey the terms of a plea offer from the Government to Petitioner and instead rejected it outright without first consulting him. Where a petitioner asserts ineffective assistance of counsel based on counsel's failure to communicate a plea offer, <u>Strickland</u> requires that a petitioner first "demonstrate a reasonable probability that [he] would have accepted the earlier plea had [he] been afforded effective assistance of counsel." <u>Frye</u>, 566 U.S. at __, 132 S.Ct. at 1409. In addition to showing that he would have accepted the earlier plea offer, a petitioner must show that, "if the prosecution had the discretion

to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." Id. __, 132 S.Ct. at 1410.

Here, Petitioner fails to allege (much less demonstrate) a reasonable probability that he would have accepted the plea offer. See Frye, 566 U.S. at __, 132 S.Ct. at 1409. Even if Petitioner could make such a showing, however, Petitioner has not alleged a reasonable probability that this plea agreement would have been accepted by the Court. For these reasons, the Court concludes that Petitioner has failed to satisfy the prejudice prong of Strickland, and therefore his ineffective assistance claim regarding the performance of Ms. Sison would be futile.

In Ground Six, Petitioner seeks to amend his § 2255 petition to include another claim of district court error based on the Speedy Trial Act. For the reasons stated in Section B, supra, this claim will be denied because the Fourth Circuit has already concluded that there was no Speedy Trial Act violation in this case.

## IV. CONCLUSION

Based on the foregoing, the Court concludes that the Government's motion for summary judgment should be granted and Petitioner's motion to

vacate should be denied. Petitioner's other requests for relief are also denied.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

## O R D E R

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's motion for summary judgment is **GRANTED**, [Doc. 6], and Petitioner's Section 2255 motion [Doc. 1] is **DENIED** and **DISMISSED**,

2.  Petitioner's motion to amend his § 2255 motion is **DENIED**. [Doc. 21]

3.  Petitioner's motion for the Court to take notice of <u>Missouri v. Frye</u> is **DENIED AS MOOT**. [Doc. 22].

4.  Petitioner's motions for default [Docs. 23 & 24] are **DENIED.**

5.  Petitioner motion for an order to show cause [Doc. 25] is **DENIED**.

6.  Petitioner's motion for clarification on whether the Government will file a response to his motion to amend [Doc. 26] is **DENIED AS MOOT**.

7.  Petitioner's motions requesting the Court to take notice of <u>United States v. Simmons</u>, 649 F.3d 237 (4th Cir. 2011) (en banc) [Docs. 27 & 28] are **DENIED AS MOOT**.

8.  Petitioner's motions for summary judgment [Docs. 29 & 30] are **DENIED**.

9.  Petitioner's motions to compel rulings on his pending motions [Docs. 31, 32, 33, 34 & 35] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed: July 12, 2013

Martin Reidinger
United States District Judge